United States Court of Appeals
FOR THE EIGHTH CIRCUIT

_____

No. 96-3059
_____

| | | |
|---|---|---|
| Robert L. Lucy, | * | |
| | * | |
| Plaintiff-Appellant, | * | Appeal from the United States |
| | * | District Court for the |
| v. | * | Eastern District of Arkansas. |
| | * | |
| Shirley S. Chater, | * | |
| Commissioner, Social Security | * | |
| Administration, | * | |
| | * | |
| Defendant-Appellee. | * | |

_____

Submitted: February 13, 1997

Filed: May 21, 1997
_____

Before HANSEN and MORRIS SHEPPARD ARNOLD, Circuit Judges, and
    MELLOY,[1] District Judge.
_____

HANSEN, Circuit Judge.

_____

    [1]The HONORABLE MICHAEL J. MELLOY, Chief Judge, United States
District Court for the Northern District of Iowa, sitting by designation.

Robert L. Lucy appeals the district court's grant of summary judgment affirming the Social Security Commissioner's decision to deny his claim for supplemental security income (SSI) benefits. We reverse and remand with instructions for the district court to remand the case to the Commissioner for further proceedings.

In his application for SSI benefits, Lucy alleged that he suffered from arthritis, gout, breathing problems, a hernia, and ulcers. At a hearing before an administrative law judge (ALJ), Lucy testified that he was 32 years old. He completed the eleventh grade in high school with special education and obtained some special training at a vocational-technical school. His past relevant work experience consisted of manual labor.

Lucy testified that he has pain in his legs, feet, lower back, knees, and stomach and that he suffers from dizziness, causing him to fall down frequently. The ALJ found that Lucy's subjective allegations of pain were not credible to the extent alleged. The ALJ noted that while Lucy's activities are limited, his pain is controlled with medication.

Dr. David Kauffman performed two physical assessments of Lucy and found that Lucy's main problem is morbid obesity. Dr. Kauffman stated that Lucy "should be able to engage in virtually any work activity." (R. at 20.) He was of the opinion that normal work activity would be good for Lucy in an effort to reduce his weight. To the contrary, Dr. James R. Harbin, an attending physician while Lucy was hospitalized for lesions on his legs, commented that Lucy suffered from shortness of breath and degenerative joint disease; that Lucy was unable to sit, stand, walk, lift carry or handle objects for any length of time; that he would be a danger to himself and others in the workplace; and that Lucy's condition will not improve. Dr. Harbin concluded that Lucy was permanently disabled. The ALJ specifically discredited the testimony of Dr. Harbin as not supported by diagnostic tests and as inconsistent with the other substantial medical evidence.

Charles Spellman, Ph.D., performed a psychological exam on Lucy, who attained a full-scale intelligence quotient of 78 on the Wechsler Adult Intelligence Scale-Revised. Dr. Spellman indicated that this score places Lucy in the borderline range of intellectual ability. He concluded that Lucy displayed a good attention span, could follow simple directions without difficulty, could handle a normal amount of stress, and could relate appropriately to others. Dr. Spellman stated that overall, Lucy's reduced intellectual ability can be expected to result in him performing at a level which is considerably lower than other persons of the same age. In conclusion, Dr. Spellman noted "[i]t appears that his disability should be based on a medical assessment." (R. at 188.)

The ALJ determined that Lucy suffers from severe impairments of morbid obesity, gout, hypertension, peptic ulcer disease, eosinophilic cellulitis, and borderline intellectual functioning, but that these impairments do not equal a listed impairment. The ALJ noted that the gout, hypertension, and ulcers are controlled by medication and the eosinophilic cellulitis has not been recurrent. The ALJ concluded that Lucy was unable to return to his past relevant work but that he was capable of performing the full range of sedentary work. Noting that the only restriction on his ability to perform the full range of sedentary work is his borderline intellectual functioning, the ALJ ultimately concluded that this restriction does not substantially limit Lucy's capacity to perform the full range of sedentary work. Relying on the Medical-Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P, app. 2, the ALJ denied Lucy's claim for SSI benefits.

The Appeals Council denied further review, and Lucy appealed to the district court. Both parties filed summary judgment motions. Lucy argued, in part, that the ALJ erred by not using the testimony of a vocational expert to determine the extent to which his nonexertional limitations may have limited his residual functional capacity to perform the full range of sedentary work. The district court concluded that the ALJ properly relied on the Guidelines because the record demonstrated that Lucy's

3

borderline intellectual functioning did not prevent him from following simple instructions, doing assigned tasks, or relating appropriately to others. Thus, the district court granted the Commissioner's motion for summary judgment, affirming the decision to deny Lucy's claim for benefits. Lucy appeals.

We will affirm the Commissioner's decision to deny SSI benefits unless it is unsupported by substantial evidence in the record as a whole or based on legal error. Newton v. Chater, 92 F.3d 688, 691-92 (8th Cir. 1996).

In this case, because the ALJ determined that Lucy could not return to his past relevant work, the burden shifted to the Commissioner to prove that a significant number of jobs exist in the national economy that he was capable of performing. Harris v. Shalala, 45 F.3d 1190, 1194 (8th Cir. 1995). Instead of requiring the testimony of a vocational expert to assess the impact of Lucy's nonexertional impairments, the ALJ relied on the Medical-Vocational Guidelines to determine that Lucy was not disabled. Lucy contends that the testimony of a vocational expert was necessary for the ALJ to determine whether his nonexertional impairments rendered him unable to engage in the full range of sedentary work.

When a claimant suffers from exertional and nonexertional impairments, and the exertional impairments alone do not warrant a finding of disability, the ALJ must consider the extent to which the nonexertional impairments further diminish the claimant's work capacity. Thompson v. Bowen, 850 F.2d 346, 349 (8th Cir. 1988). If the claimant's characteristics do not differ significantly from those contemplated in the Medical-Vocational Guidelines, the ALJ may rely on the Guidelines alone to direct a finding of disabled or not disabled. Id. That is to say, "an ALJ may use the Guidelines even though there is a nonexertional impairment if the ALJ finds, and the record supports the finding, that the nonexertional impairment does not diminish the claimant's residual functional capacity to perform the full range of activities listed in the Guidelines." Id. at 349-50. We have explained as follows:

4

In this context, "significant" refers to whether the claimant's nonexertional impairment or impairments preclude the claimant from engaging in the full range of activities listed in the Guidelines under the demands of day-to-day life. Under this standard isolated occurrences will not preclude the use of the Guidelines, however persistent nonexertional impairments which prevent the claimant from engaging in the full range of activities listed in the Guidelines will preclude the use of the Guidelines to direct a conclusion of disabled or not disabled.

Id. at 350.

We conclude that the ALJ inappropriately determined that Lucy could engage in the full range of sedentary work without consulting the testimony of a vocational expert. The ALJ's findings concerning Lucy's residual functional capacity are not supported by substantial evidence because they do not consider the impact of all of Lucy's nonexertional impairments, and they are internally inconsistent. The record supports the ALJ's finding that Lucy suffers from borderline intellectual functioning. Then, the ALJ found that Lucy's "residual functional capacity for the full range of sedentary work is reduced by his borderline intellectual functioning," (Appellant's Adden. at AD-9), but later the ALJ stated that Lucy's capacity for the full range of sedentary work has not been significantly compromised by the nonexertional limitations. Both of these findings cannot be supported by substantial evidence.

We have previously concluded that borderline intellectual functioning, if supported by the record as it is here, is a significant nonexertional impairment that must be considered by a vocational expert. See Pickney v. Chater, 96 F.3d 294, 296-97 (8th Cir. 1996) (finding claimant had a full-scale IQ of 78, which requires the consideration of a vocational expert); Gude v. Sullivan, 956 F.2d 791, 796 n.3 (8th Cir. 1992) (noting that borderline intelligence should be considered by vocational expert); Spencer v. Bowen, 798 F.2d 275, 278 n.2 (8th Cir. 1986) (holding claimant's intellectual

5

impairment should be considered by a vocational expert).  Thus, the ALJ erred by relying only on the Guidelines.

The Commissioner contends that a vocational expert was not necessary here because, although Lucy suffers from a borderline intellect, Dr. Spellman noted that Lucy could follow simple directions, and consequently, Lucy's impairment does not prevent him from engaging in the full range of sedentary work.  The Social Security's own list of unskilled sedentary jobs, however (see Appellant's Adden. at AD-24-33), indicates that many jobs within this range require more than the mental capacity to follow simple instructions.  For each job described, the Dictionary of Occupational Titles specifies the type of reasoning capabilities the job requires.  2 U.S. Dep't of Labor, Dictionary of Occupational Titles, 1010-11 (4th ed. 1991).  For instance, a job rated reasoning level one requires the ability to understand and carry out simple instructions, whereas a job rated reasoning level two requires the ability to understand and carry out detailed instructions.  Id. at 1011.  Many of the jobs listed require level two reasoning or higher in the unskilled sedentary job category.  Thus, contrary to the ALJ's conclusion, it appears that Lucy's borderline intellectual functioning does have an impact on his capacity to perform the full range of sedentary work.

The Commissioner also relies on Dr. Spellman's conclusion that "[Lucy's] disability should be based on a medical assessment," rather than a mental impairment. (R. at 188.)  This argument does not alter our conclusion.  While borderline intellectual functioning may not rise to the level of a disability by itself, a claimant is nevertheless entitled to have a vocational expert consider this condition along with his other impairments to determine how it impacts upon the claimant's residual functional capacity. See Pickney, 96 F.3d at 297.

The ALJ found morbid obesity to be Lucy's primary problem and concluded that this impairment limited his mobility, but not to the extent asserted.  Obesity is also a nonexertional impairment which might significantly restrict a claimant's ability to

perform the full range of sedentary work. See Evans v. Chater, 84 F.3d 1054, 1056 (8th Cir. 1996). The impact of this nonexertional limitation should be considered by a vocational expert in addition to Lucy's borderline intellectual functioning. Id.

We conclude that the ALJ's decision is not supported by substantial evidence on the whole record, because the ALJ improperly applied the Medical-Vocational Guidelines to direct a conclusion that Lucy was not disabled without consulting a vocational expert to assess Lucy's residual functional capacity in light of his significant nonexertional impairments. On remand, a vocational expert should be called and asked a hypothetical question which precisely sets forth all of Lucy's impairments. See id.

Accordingly, we reverse the judgment of the district court and remand with instructions for the district court to remand this case to the Commissioner for further proceedings consistent with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

7